IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MALCHOLM JEMAL HALE,          *
                              *
        Plaintiff,            *     CIVIL ACTION NO. 13-00462-CB-B
                              *
vs.                           *
                              *
CAROLYN W. COLVIN,[1]         *
                              *
Commissioner of Social        *
Security,                     *
                              *
        Defendant.            *

## REPORT AND RECOMMENDATION

Plaintiff Malcholm Jemal Hale (hereinafter "Plaintiff"), who is proceeding *pro se*, seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   Upon consideration of the administrative record and memoranda of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.   <u>Procedural History</u>

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on June 30, 2009.  (Tr. 188).  Plaintiff alleges that he has been disabled since July 5, 2009, due to asthma, shortness of breath, coughing, and weakness.  (<u>Id.</u> at 188, 210).  Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Michael L. Levinson (hereinafter "ALJ") on January 14, 2011.  (<u>Id.</u> at 141-44).  On January 24, 2011, ALJ Levinson issued an unfavorable decision finding that Plaintiff is not disabled.  (<u>Id.</u> at 144).  Plaintiff appealed that decision to the Appeals Council, which denied review.  Plaintiff then sought review before the United States District Court for the Northern District of Alabama, which remanded the case pursuant to sentence six because the hearing transcript was not available.  (<u>Id.</u> at 3, 71).

On remand, Administrative Law Judge (hereinafter "ALJ") Roger A. Nelson conducted a second hearing on July 20, 2012, which Plaintiff attended, *pro se*.  (<u>Id.</u> at 87).  At the second hearing, Plaintiff was apprised of his right to have counsel, and he elected to proceed without counsel and provided testimony

related to his claims.  (Id. at 92, 105).  A vocational expert ("VE"), also appeared at the hearing and provided testimony. (Id. at 119).  On October 2, 2012, ALJ Nelson issued a second unfavorable decision finding that Plaintiff is not disabled. (Id. at 81).  On October 25, 2012, Plaintiff appealed that decision to the Appeals Council, which denied review on August 13, 2013.  (Id. at 1).

Thus, the ALJ's decision dated October 2, 2012 became the final decision of the Commissioner.  Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

### A.  Whether substantial evidence supports the ALJ's RFC assessment?

## III. Factual Background

Plaintiff was born on May 16, 1988, and was twenty-four years of age at the time of his second administrative hearing on July 20, 2012.[2]  (Tr. 87, 188).  Plaintiff testified that he

---

[2] As discussed above, following Plaintiff's first administrative hearing and denial in January 2011 (id. at 1, 144), he appealed to the United States District Court for the Northern District of Alabama, which remanded his case pursuant to sentence six because the hearing transcript was not available.  (Id. at 1, 71).  Plaintiff was given a second, de novo hearing on July 20, 2012, before ALJ Nelson.  (Id. at 71, 87).

graduated from the University of Alabama at Birmingham ("UAB) in 2011 with a B.A. in Business Administration. [3]   (Id. at 107). Plaintiff testified that, prior to graduation, from 2005 to 2009, he worked as a waiter at various restaurants, but since graduation, he has been looking for a desk job.  (Id. at 114-16).  Plaintiff testified that he applied for jobs at Regions Bank, Wachovia Bank, and Wells Fargo but was not hired after telling them that he had been fired as a waiter because of his asthma.  (Id. at 114).

Plaintiff testified that he is unable to work because of his asthma, which causes him to avoid most physical activities, including running and sports.  (Id. at 112).  In his Function Report dated August 20, 2009, Plaintiff also stated that he constantly coughs throughout the day and night and that his asthma affects his sleep.  (Id. at 192-93).  According to Plaintiff, his asthma also makes him tired and weak, which makes it difficult for him to drive or attend to his personal needs. (Id. at 193-94).

Plaintiff stated that he lives alone, that he drives when necessary, that he shops online, cooks, does laundry and ironing, and that he is able to handle his own finances.  (Id.

---

[3] Plaintiff took an exceptionally heavy class load (18 hours) his last semester so that he could graduate, stating: "I had to cram it in and go ahead to graduate."  (Tr. 109).

at 194-95).  Plaintiff reported that he can lift fifty pounds, squat for ten minutes, stand for fifteen to twenty minutes, walk thirty feet, and climb one staircase.  (Id. at 197).

According to Plaintiff, his medications help after he takes them; however, they only last about three hours, and he can only take them twice a day.  (Id. at 113, 192).  Plaintiff's medications include Advair, Singulair, and ProAir.  (Id. at 106-07).  Plaintiff reported that he has had no side effects from his medications.  (Id. at 214).

**IV.  Analysis**

    **A.  Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.

---

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

_Heckler_, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. _Chester v. Bowen_, 792 F. 2d 129, 131 (11th Cir. 1986); _Short v. Apfel_, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.** **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); _see also_ 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5] 20 C.F.R.

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the

6

§§ 404.1520, 416.920.

In the case *sub judice*, following remand and a *de novo* hearing, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 5, 2009, the alleged onset date, and that he has the severe impairment of chronic asthma. (Tr. 74).  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

The ALJ concluded that Plaintiff retains the residual

---

claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

functional capacity (hereinafter "RFC") to perform sedentary and light level work, with the following exceptions: Plaintiff "can walk for twenty to thirty minutes at one time and only one and a half hours in a standard 8-hour workday. [Plaintiff] can stand for one hour at a time for a total of only three hours in an eight-hour day. [Plaintiff] can stand and walk in combination for approximately four hours in an eight-hour day. [Plaintiff] must avoid all significant exposure to dust, fumes, smoke, cleaners, and solvents. [Plaintiff] must also avoid extremes of heat, cold, and humidity in his work environment, i.e., opting, instead, for a more climate controlled work setting. [Plaintiff] must also avoid all climbing of ladders, ropes, and scaffolds. Finally, [Plaintiff] can only occasionally climb up stairs in the workplace." (Id. at 75). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent described. (Id. at 76).

Given Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform any past relevant work. (Id. at 79). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of sedentary and light work, as well as his age, education and

work experience, there are also other jobs existing in the national economy that Plaintiff is able to perform, such as "information clerk," "customer service clerk," and "telephone solicitor," all of which are classified as sedentary. (Id. at 79-80). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 80-81).

In determining that Plaintiff did not meet any Listing, the ALJ also made the following relevant findings:

> The claimant's asthma does not meet the requirements of Listing 3.03. It requires asthma with chronic asthmatic bronchitis or asthma attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. However, there is no medical evidence of chronic bronchitis that causes valid spirometry results low enough to meet the requirements for the claimant's height. The most recent respiratory testing shows that the claimant had three attempts that each had inadequate effort (Exhibits 5F, 8F and 14F). Likewise, there is no evidence of attacks with the frequency required by the listing (Exhibits 2F, 8F, 10F, and 15F). Furthermore, Victoria L. Hogan, M.D. confirmed that the respiratory testing in Exhibit 4F does not meet the requirements of the listing. The repeatability of testing as well as the presence of acute coughing noted on the forms both would limit the validity of the testing. (Exhibits 4F and 5F).

(Id. at 74-75).

In addition, in assessing the Plaintiff's RFC, the ALJ made the following relevant findings:

The claimant alleges that he "can't hold a job with [his] asthma." He reported shortness of breath, coughing, and weakness (Exhibit 4E). The claimant alleges that he becomes light headed when he starts to cough if he walks for long periods. He stated that when he runs that he feels like he is going to pass out (Exhibit 7E). The claimant alleges that tight clothing and bathing even makes him cough. He reported that he cannot play sports. He reported that he can only stand for fifteen or twenty minutes and walk for thirty feet (Exhibit 2E). The claimant testified that he cannot run. . . .

In terms of the claimant's respiratory impairment, the claimant's alleged limitations are not fully supported by the evidence. The claimant testified that he is taking Advair, Singulair, and ProAir. He stated that ProAir, a rescue inhaler, is taken twice a day then again as needed. He testified that Singulair is taken once a day, and Advair is taken twice a day. Nonetheless, the claimant reported that he has no side effects from his medications (Exhibit 4E). However, he did later report that using Albuterol makes him sleepy (Exhibit 7E). He testified that the medications do ultimately help his asthma symptoms. He reported some limited overuse of his inhaler; however, he also confirmed that he has obtained yearlong prescriptions to avoid having to continue to pay insurance copayments just to obtain medications. This last factor of the duration without medical treatment is substantially inconsistent with the extent of the claimant's allegations of uncontrollable asthma.

The claimant testified that he obtained a degree recently in business administration from the University of Alabama at Birmingham. The claimant testified that he lived in Birmingham and attended school from 2008 through 2011 when he graduated. The

claimant was taking eighteen college course hours per semester in his final year. He also took summer courses (Exhibit 20E). The claimant testified that he missed no more than approximately 3 classes a semester to avoid being dropped from the class. He testified that he lived off-campus, but within driving distance. The claimant testified that he parked on the street because it was closer to the elevator for his classes. The claimant testified that he did have low grades in one course; however, he stated that it was not due to the asthma. He stated that he missed a test and was not allowed to retake it. He continues to search for work at a bank. However, the claimant also testified that his asthma symptoms seem to increase when he is lying down at night.

The claimant reported that, with the exception of time in school and in part-time work, he avoids other activities. Nonetheless, he reported that he can cook, drive, wash clothes, iron, shop online, pay bills, count change, handle bank accounts, watch television, attend school Monday through Friday. He admitted being able to lift fifty pounds, squat for ten minutes, stand for fifteen or twenty minutes, and climb a staircase (Exhibit 2E). He testified that he parked on the street when he attended school to be close to the elevator. Nonetheless, his testimony is inconsistent with the report that it takes him five to ten minutes to rest after walking only thirty feet in Exhibit 2E. On the other hand, the claimant is given substantial benefit of the doubt that he does still have significant limitations in standing and walking due to his asthma. However, the same limitations are fully accommodated within the above residual functional capacity.

The claimant testified that he remains on his parents' insurance policy. Nonetheless, he has obtained very limited treatment for

his respiratory impairments.  The claimant's most recent treatment was in Birmingham with Richard C. Crittenden, M.D. However, despite the claimant's reports, Dr. Crittenden's treatment notes show that he was only prescribed one puff of the ProAir inhaler as needed, one 10 mg Singulair per day, and one puff of Advair every day.  He is given the benefit of the doubt that he may have increased the dosages consistent with his symptoms because his pharmacy records confirm that he was obtaining the same dosage as prescribed, despite his reports that he was doubling two of the three medications that were taken regularly (Exhibit 21E).

He has been administered respiratory testing; however, each of his tests reference "non-effort" because there was coughing that occurred during the test or other issues of validity in the testing (Exhibits 4F, 5F, 8F, and 14F).  The problem each time was the claimant's repeated coughing.  Dr. Veluz did conclude, following his testing, that the claimant does have significant obstructive disease. Nonetheless, the claimant reported being hospitalized due to asthma at Mobile Infirmary repeatedly near the time of the examination.  Dr. Veluz stated that *the claimant asserted* that he could neither stand nor walk for any long duration of time.  The claimant "coughs intermittently" and did have prolonged expirations during the examination.  Yet, his respirations per minute were calculated at 22, which is normal.  Dr. Veluz also noted no findings of wheezing, ronchi, or rales.  Nonetheless, the claimant did have increased breath sounds.  Dr. Veluz even stated that he would have expected, given the report of the claimant, that he would have an increased chest diameter; however, this was not the case (Exhibit 4F).

The earliest medical evidence in July and

August 2008 do show complaints of a persistent, nonproductive cough. As a result, the claimant was prescribed inhaled medications. There was still no evidence of ongoing adjustments to medications or other treatment notes to suggest the duration of ongoing symptoms the claimant alleges (Exhibits 1F and 10F).

The claimant did obtain refills in December 2008 and February 2009. However, he was not in respiratory distress during those examinations. He also had bilateral breath sounds. The claimant reported sinus drainage and was prescribed Singulair in February. He also was prescribed a Ventolin inhaler as well as antibiotics for his acute sore throat and runny nose at that time (Exhibit 2F).

The claimant had gone to the emergency room twice in 2008 for symptoms of coughing. However, his diagnosis each time was asthmatic bronchitis. There is no evidence that this developed into pneumonia or that he required hospitalization. There was only evidence of *mild* wheezing during one of the emergency room visits, and the proximity of the emergency room visits suggest that they may have represented the same incident of asthmatic bronchitis. Furthermore, the only chest x-ray showed the heart and lungs within normal limits (Exhibits 11F and 12F).

The claimant did have two examinations at American Family Care Clinic. In August 2008, the claimant did present with a cough; however, there was no other evidence of treatment. During October 2011, the claimant had complaints of the dysuria and burning during urination. However, the testing was normal and no further treatment occurred. There was no evidence of any reported coughing or other problems during that examination. (Exhibit 10F).

The only more recent treatment was obtained

at the Lakeshore Center. He had an acute upper respiratory infection in October 2009. He was prescribed an antibiotic and prescription cough syrup. There was no evidence of wheezing, asthma, or other similar complaints. However, during an examination in June 2010, the claimant did return seeking a refill of his asthma medication. He also did report coughing with very minimal exertion. Nonetheless, the examination report states that "while claiming to be short of breath and having difficulty breathing, his lungs are entirely clear." A chest x-ray was normal. However, claimant's medications were refilled; and he was prescribed a prednisone tapering dosage (Exhibits 8F and 13F).

The examination in January 2011 involved only complaints of acute eye redness or discharge. The claimant also reported an acute back injury in August 2011. However, at this examination, he confirmed that he only "uses Advair almost every day" and "ProAir 3-4 times a week" directly contradicting his testimony. The treatment notes state that he "has no current asthma problems." The claimant has normal respiration and normal breath sounds. There were no reports of the coughing that was noted more consistently during his other treatment. Still, the claimant did have refills of his current medications. A second examination in August 2011 also included complaints of a rash that had been present for approximately three days. Nonetheless, this examination included no evidence of asthma and no reports of symptoms. Even the respiratory examination showed normal findings and no distress (Exhibits 8F and 13F).

The claimant returned to treatment in November 2011; however, this was described as only routine follow-up. The claimant had "no recent asthma episodes," and, aside from the request for a note declaring his dog to

be a service dog for his asthma, the claimant merely obtained refills of his medications. The claimant continued to have normal respiration and no distress; normal breath sounds; and no rales, ronchi, wheezes or rubs (Exhibits 8F and 13F).

Therefore due to his respiratory impairment, the claimant can lift and carry only approximately twenty pounds occasionally or ten pounds frequently, despite his report of being able to lift fifty pounds. He would be restricted to the light exertional level. However, the claimant can walk for twenty to thirty minutes at one time and one and a half hours in an eight-hour day to accommodate his reports of weakness, shortness of breath, and/or coughing. He can stand for one hour at a time for a total of three hours in an eight-hour day. The claimant can stand and walk in combination for approximately four hours in an eight-hour day. In order to avoid exacerbations of his condition, the claimant must avoid all exposure to dust, fumes, smoke, cleaners, and solvents. The claimant must avoid extremes of heat, cold, and humidity. The claimant will require a climate controlled work environment. The claimant must avoid climbing ladders, ropes, and scaffolds. The claimant can only occasionally climb stairs.

As for the opinion evidence, I give very limited weight to the opinion evidence in Exhibits 6F [from State Agency reviewer Robert Heilpern, M.D.]. These opinions are inconsistent with the medical evidence and offered solely by a non-examining medical source. While this form is virtually the only direct opinion evidence regarding any functional limitations, it is substantially inconsistent with the claimant's allegations.

I must give some weight to the opinion in Exhibit 5F [of State Agency physician,

Victoria L. Hogan, M.D.] that the claimant's impairments do not meet the requirements of the asthma listing. Her observations regarding the previous test results are consistent with the remainder of the evidence and the abnormalities obvious on the documents in Exhibit 4F themselves.

Some weight is also given to the opinion evidence in Exhibit 4F. Dr. Veluz was an examining source. Furthermore, he did conclude that the claimant has evidence of obstructive disease despite the abnormalities in the testing. However, Dr. Veluz did not offer any opinion regarding any functional limitations due to the claimant's asthma. Therefore, greater weight is given to the conclusions in Exhibit 5F regarding the respiratory testing.

In summary, the above residual functional capacity assessment is supported by the claimant's lack of treatment (despite having health insurance coverage); the documented effectiveness of the claimant's long-term prescribed medications; the lack of regular emergency room treatment; the lack of objective medical confirmation of the severity and frequency of the claimant's asthma attacks and/or symptoms; the limited nature of his asthma symptoms; his continuing wide range of activities of daily living wholly inconsistent with the symptomatic allegations; the lack of diagnostic testing or clinical observations to support the claimant's symptomatic allegations; and the opinion of Dr. Hogan.

(Id. at 75-79) (emphasis in original).  The Court now considers

the foregoing in light of the record in this case and the issue

on appeal.

16

1.   **Issue**

**Whether substantial evidence supports the ALJ's RFC assessment?**

Plaintiff, proceeding *pro se*, argues that the ALJ's finding that he retains the RFC to perform a range of light and sedentary work, conditioned upon the previously stated restrictions (id. at 75), is not supported by substantial evidence.[6]  (Doc. 24 at 6-9).  The Commissioner counters that the ALJ's RFC determination is supported by substantial medical evidence in the record, namely Plaintiff's medical records and

---

[6] Plaintiff also argues that he was denied due process in his first administrative hearing because ALJ Michael Levinson "did not fully take the time to evaluate [his] case. . . . " (Doc. 24 at 4).  However, the record shows that Plaintiff's case was subsequently remanded by the district court, and he given a second, *de novo* hearing before ALJ Roger Nelson. (Tr. 16-17). Therefore, Plaintiff's argument regarding his first administrative hearing is clearly without merit.  His due process argument regarding his second administrative hearing is likewise without merit.  Plaintiff argues that he was denied due process with respect to his second administrative hearing inasmuch as he, not ALJ Nelson, had to obtain additional medical records for his hearing and, further, that he had difficulty obtaining the transcript of his second administrative hearing from the Social Security office for the purpose of filing his administrative appeal. (Doc. 24 at 5-6).  Plaintiff concedes, however, that the additional medical records related to his claims were ultimately obtained; the Appeals Council ultimately provided him with a copy of the complete transcript of his second hearing; and ALJ Nelson granted him an additional thirty days to update his written exceptions to the decision.  (Id.). Therefore, Plaintiff's arguments that he was denied due process in this regard are also without merit.

the report of consultative physical examiner Rodolfo Veluz, M.D. (Doc. 28 at 2-6). Having reviewed the record at length, the Court agrees that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

As previously stated, the ALJ concluded that, although Plaintiff has the severe impairment of chronic asthma, he is not disabled. (Tr. 74-80). In making this determination, the ALJ relied primarily upon the medical records of Plaintiff's treating physicians, the report of consultative physical

examiner Dr. Veluz, the report of State Agency physician Dr. Hogan, and the Plaintiff's testimony. (Id. at 76-79). As the ALJ found, this evidence confirms that Plaintiff's chronic asthma, while significant, is not disabling in nature.

First, as the ALJ found, Plaintiff was diagnosed with asthma as a child[7] and experienced a recurrence of symptoms in June 2008 in the form of a persistent, non-productive cough and occasional wheezing. (Id. at 261-65). Over the following months, Plaintiff sought treatment at American Family Care Medical Center and Hoover Family Medicine, where he was given breathing treatments and was prescribed Advair, ProAir, and Singulair. (Id. at 261-65, 269-71).

As the ALJ found, from 2009 to 2011, Plaintiff sought limited treatment for his asthma symptoms. In October 2009, Plaintiff presented to MedHelp, PC with symptoms of an upper respiratory infection, including cough, and was treated with steroids and an antibiotic. (Id. at 315-16). His treatment notes reflect "lungs clear to auscultation and percussion; symmetric expansion; no dyspnea." (Id. at 315).

Plaintiff returned to MedHelp, PC the following year, in

---

[7] Plaintiff was born on May 16, 1988 (Tr. 188) and was hospitalized in 1989 at the age of one and 1990 at the age of two with asthmatic bronchitis, wheezing, and a cough. (Id. at 333-37). Despite Plaintiff's report to Dr. Veluz of multiple hospital visits to Mobile Infirmary hospital in 2009 (Tr. 281), the hospital had no such records. (Id. at 302).

June 2010, for refills of his asthma medications and was examined by C. Crittenden, M.D, who noted a history of childhood asthma that had remitted for a number of years and had returned when Plaintiff was a junior in high school. (Id. at 308). Plaintiff reported "intractable episodes of coughing" which had "finally responded to prophylactic asthma medications."[8] (Id.). A chest x-ray was "normal." (Id.).

The following year, in January 2011, Plaintiff presented to MedHelp, PC for treatment of an eye infection, with no asthma related complaints. Dr. John Watkins' notes reflect "normal appearance and symmetric expansion of chest wall, and "normal respiratory rate and pattern with no distress." (Id. at 306). Plaintiff returned on two occasions in August 2011 for treatment of non-asthma related ailments and reported no asthma problems. (Id. at 310, 314, 346). On both occasions, his respiratory examination was "normal." (Id.). In November 2011, Plaintiff returned to MedHelp, PC for a routine follow up of his asthma and refills of his medications. (Id. at 318). He was examined by Dr. Pink Folmar who noted "no recent asthma episodes." (Id.).

---

[8] As the ALJ indicated, pulmonary function tests conducted in September 2009 and June 2010 were inconclusive because Plaintiff coughed during the tests. (Tr. 286-91, 305).

As the ALJ found, Plaintiff's treatment records fail to support his claim that his asthma prevents him from performing any type of work.  To the contrary, none of Plaintiff's treating physicians ever indicated that Plaintiff's asthma is disabling in nature, and his treatment records indicate that his asthma was responding to medication treatment.  Indeed, despite a history of a chronic, intermittent cough, Plaintiff's most recent respiratory examinations were essentially normal.

In addition, as the ALJ found, consultative physical examiner Rodolfo Veluz, M.D., found on October 19, 2009, that Plaintiff has an "intermittent," "bothersome and annoying cough," "significant obstructive disease," "increased breath sounds," "prolonged expirations," and "increased AP chest diameter which [Dr. Veluz] was expecting [Plaintiff] would have."  (Id. at 282).  However, Dr. Veluz's respiratory examination also revealed "no wheezing, no rhonchi, [and] no rales."  (Id.).  Dr. Veluz did not indicate any functional limitations caused by Plaintiff's asthma.[9]  (Id. at 282-91).

Moreover, Plaintiff's activities of daily living belie his claim that his asthma is disabling.  As the ALJ indicated, Plaintiff managed a heavy class load without significant

---

[9] In addition, as the ALJ found, State Agency physician Dr. Victoria Hogan reviewed Plaintiff's medical records and concluded that Plaintiff's asthma did not meet the listing level of severity.  (Tr. 292).

absenteeism during the relevant period (from 2008 through 2011), and succeeded in obtaining a degree in business administration from the University of Alabama at Birmingham. (Id. at 107-112). In addition, Plaintiff stated that he lives alone, that he drives when necessary, that he shops online, cooks, does laundry and ironing, that he is able to handle his own finances (id. at 194-95), that he can lift fifty pounds, squat for ten minutes, stand for fifteen to twenty minutes, walk thirty feet, and climb a staircase (id. at 197), and that his medications help and have no side effects (id. at 113, 192, 214).

Having reviewed the record at length, the Court finds, as did the ALJ, that Plaintiff has only sporadically sought medical treatment for his allegedly debilitating asthma (despite having health insurance); his prescribed medications have been largely effective; none of his treating or examining physicians has indicated that his asthma is debilitating in nature; and Plaintiff's wide range of activities of daily living are inconsistent with his allegations. The Court further finds that nothing in the record contradicts the ALJ's RFC assessment for a range of light or sedentary work, as limited by the noted restrictions which accommodate any limitations posed by Plaintiff's asthma. Therefore, Plaintiff's claim is without merit.

As a final matter, the Court notes that Plaintiff has submitted additional evidence for the Court's review. The evidence includes medical records from USA Family Medicine dated March 28, 2013, which is five months *after* the ALJ's decision on October 2, 2012. (Doc. 21 at 1).  The USA Family Medicine records reflect that Plaintiff was treated for routine asthma symptoms on March 12, 2013, and they contain a single entry from Dr. Gerald Liu wherein he states that Plaintiff's asthma "[s]ounds like [it] is uncontrolled".  (Id. at 2).  Dr. Liu increased Plaintiff's dosage of Advair to 500/50 mcg (one puff twice a day), refilled his ProAir and Singulair, and instructed Plaintiff to return in one year.  (Id.).   Plaintiff also submitted his prescription profile from Walgreens reflecting prescriptions he had filled for asthma medications from September 2011 to October 2013.  (Id. at 3-12).

The sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable.  Enix v. Commissioner of Soc. Sec., 461 Fed. Appx. 861, 863 (11th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "'[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.'"  Id. (quoting Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007)).  "To

show that a sentence six remand is needed, the claimant must
establish that: (1) there is new, noncumulative evidence; (2)
the evidence is material, that is, relevant and probative so
that there is a reasonable possibility that it would change the
administrative result and (3) there is good cause for the
failure to submit the evidence at the administrative level."
Id. (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir.1986)
(internal quotation marks omitted)).

    "The new evidence must relate to the period on or before
the date of the administrative law judge's ("ALJ") decision."
Id. (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir.
1999) and 20 C.F.R. §§ 404.970(b), 416.1470(b), requiring
Appeals Council to consider new evidence "only where it relates
to the period on or before the date of the administrative law
judge hearing decision").  "Evidence of deterioration of a
previously-considered condition may subsequently entitle a
claimant to benefits from a new application, but it is not
probative of whether a person is disabled during the specific
period under review."  Id. (citing Wilson, 179 F.3d at 1279).

    "In contrast, evidence of a condition that existed prior to
the ALJ's hearing, but was not discovered until afterward, is
new and non-cumulative."  Id. (citing Vega v. Commissioner of
Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (concluding
that remand was warranted based on evidence that after the

24

hearing, a doctor discovered and surgically corrected a herniated disk, which was material to the issue of the severity of claimant's spinal problems during the relevant time period); Hyde v. Bowen, 823 F.2d 456, 459 & n.4 (11th Cir. 1987) (concluding that remand was warranted based on new evidence that claimant's prosthetic device was loose, which, "if accepted" provides "an objective medical explanation" for claimant's previously unexplained complaints of pain in his hip and leg).

As stated, in the present case, the evidence proffered by Plaintiff consists of a single note by Dr. Liu documenting treatment of Plaintiff for routine asthma symptoms five months *after* the ALJ's decision and a list of Plaintiff's asthma prescriptions refilled from 2011 through 2013. (Doc. 21). Assuming, *arguendo,* that the additional evidence is not cumulative and that Plaintiff has good cause for not submitting the evidence at the administrative level, Plaintiff has not shown that there is a reasonable possibility that the new evidence (*i.e.*, Dr. Liu's treatment note and/or the prescription refill list) would change the administrative result. Indeed, there is nothing in this evidence to suggest a disabling medical condition. To the contrary, in his treatment note, Dr. Liu indicated that Plaintiff should return for a follow-up visit in one year. (Doc. 21 at 2). Because this new evidence is not material, a sentence six remand on the basis of new evidence is

unwarranted in this case.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." Dupree v. Warden, Attorney General, State of Alabama, 715 F.3d 1295, 1300 (11th Cir. 2011).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is

found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **27th** day of **January, 2015.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
